IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION



| | |
|---|---|
| IN THE MATTER OF THE APPLICATION OF THE UNITED STATES OF AMERICA FOR AN ORDER AUTHORIZING THE INSTALLATION AND USE OF A PEN REGISTER AND TRAP AND TRACE DEVICE, AND FOR AN ORDER AUTHORIZING THE DETERMINATION OF CERTAIN SUBSCRIBER INFORMATION ON VERIZON CORPORATION CELLULAR TELEPHONE (417) 840-2479, AND FOR APPROPRIATE ORDERS | No. 13-PR-2026DPR<br><br>SEALED |

## APPLICATION FOR PEN REGISTER
## ON TELEPHONE NUMBER (417) 840-2479

Tammy Dickinson, United States Attorney for the Western District of Missouri, by and through Gary K. Milligan, Assistant United States Attorney, hereby applies to the Court for an Order authorizing the installation and use of a pen register and a trap and trace device for Verizon cellular telephone number (417) 840-2479 (hereinafter "Target Cellular Telephone"), to provide all subscriber information and for determination of other telephone information on Target Cellular Telephone, and in support of this application, states as follows:

1. Applicant is an attorney for the government as defined in Fed. R. Crim. P. (1)(b), and therefore, pursuant to 18 U.S.C. §§ 2703 and 3122, may apply for an order authorizing the installation and use of a pen register and a trap and trace device.

2. Applicant certifies, based on the following information received from Detective James D. Hamilton of the South Central Drug Task Force, currently assigned as a Task Force Officer with the U.S. Drug Enforcement Administration, that:

(a) In May 2013, a DEA confidential source (hereafter referred to as CS1) identified a multi-pound methamphetamine supplier as "Big Dave." CS1 said that "Big Dave" lived in Buffalo, Missouri and worked at Coryell Enterprises in Springfield, Missouri as a maintenance supervisor. CS1 did not know "Big Dave's" last name, but stated that he was distributing methamphetamine to Josh LYONS among others.

(b) CS1 said that "Big Dave's" four year old daughter had recently complained of vaginal bleeding and "Big Dave" suspected his neighbor of sexually assaulting her. "Big Dave" went to the Buffalo Police Department to report it. TFO Hamilton contacted the Dallas County Sheriff's Office who was able to locate a report in which David ZOUCK reported his daughter having vaginal bleeding and suspected his neighbor of sexually assaulting her. ZOUCK reported his current address as 507 W. Benton Street, Buffalo, Missouri.

(c) TFO Hamilton checked with the Missouri Division of Employment Security which was able to determine that David ZOUCK was employed by Coryell Enterprises in Springfield, Missouri.

(d) On August 14, 2013, law enforcement conducted a controlled buy of ¼ ounce of methamphetamine involving ZOUCK. Another confidential source (hereafter referred to as CS2) met with William ADCOCK and Ashley EAKIN in Branson, Missouri. ADCOCK originally wanted CS2 to front the money so that ADCOCK could go get the methamphetamine. When CS2 said that he/she would not front the money, ADCOCK agreed to take CS2 to the source of supply of the methamphetamine.

(e) They traveled to Springfield, Missouri where they met with David ZOUCK driving a red Chevrolet truck with a Coryell Enterprises sign on the doors. CS2 gave ADCOCK $500.00 in United States currency expecting to receive ¼ ounce methamphetamine in return. ADCOCK got out of the vehicle and got into ZOUCK's vehicle.

(f) ZOUCK and ADCOCK then traveled to Kad-E-Korner, 2633 E. Shelby Road, Springfield, Missouri. ZOUCK stopped and ADCOCK got out of the truck. ZOUCK left and traveled to 2725 E. Shelby Road, Springfield, Missouri, the residence immediately northeast of Kad-E-Korner. A short time later, CS2 and EAKIN arrived, and ADCOCK got into the vehicle.

(g) After a few minutes, ZOUCK returned to Kad-E-Korner and met with ADCOCK in the parking lot. ZOUCK gave ADCOCK an unknown amount of methamphetamine and they each got back into their respective vehicles. Once inside the vehicle, ADCOCK handed CS2 approximately ¼ ounce of methamphetamine. Both vehicles left the lot travelling northeast.

(h) ZOUCK was surveilled as he traveled in his vehicle to 507 W. Benton Street, Buffalo, Missouri, the residence previously identified as that of David ZOUCK. A search of public records databases show that the utilities for that address are in the name of David ZOUCK.

(i) During the transaction, TFO James Hamilton was able to observe ZOUCK as the driver of the red Chevrolet truck with a Coryell Enterprises sign on the doors. Additionally, after identifying ZOUCK from the Buffalo Police Department report discussed above, TFO Hamilton obtained a copy of the driver's license

photograph on file for ZOUCK with the State of Missouri. After observing ZOUCK during the narcotics transaction, TFO Hamilton was also able to identify that he was the same David ZOUCK from the driver's license photograph.

(j) ADCOCK, EAKIN, and CS2 were surveilled as they traveled south on Highway 65 toward Branson. The vehicle was then stopped by Missouri State Highway Patrol Trooper Chad Heil in Taney County. As a result of the stop, agents recovered approximately ¼ ounce of methamphetamine from CS2 as well as approximately ½ ounce from EAKIN.

(k) During a subsequent interview, ADCOCK told TFO Dan Banasik that they had just returned from Springfield where they had met with a white male he knew as "Chubs" driving a red truck. He said he met with "Chubs" with the intent of getting methamphetamine, and that the methamphetamine located in the vehicle came from "Chubs," who was driving the red truck. ADCOCK said that he had last dealt with "Chubs" approximately one week prior.

(l) This story was corroborated by EAKIN during her interview with Missouri State Highway Patrol Sergeant Danielle Heil. EAKIN said that the methamphetamine found on her person had been given to her by ADCOCK and that ADCOCK had gotten it from a white male she knew as "Pork" driving a red truck that they had met at Walmart.

(m) Later that same evening, agents from the DEA were conducting surveillance on Josh LYONS. According to CS1, LYONS is a multi-ounce methamphetamine distributor being supplied by ZOUCK. During the surveillance, agents observed LYONS meet with ZOUCK at a McDonald's restaurant located at 3320 E.

–4–

Battlefield, Springfield, Missouri. ZOUCK was driving the same red truck. ZOUCK was seen showing LYONS an object that measured approximately 14" long by 20" wide by 2" tall. From a distance, it appeared to agents as a laptop or thin briefcase. The following day, LYONS told CS1 that he had met with his source of supply the previous evening and the source of supply showed him a car stereo amplifier.

(n) Analysis was conducted of phone tolls from the two phones known to be used by LYONS, 417-496-0011 and 816-922-0880. The tolls indicated 816-922-0880 was in contact with the Target Cellular Telephone (417-840-2479) 534 times between July 15, 2013, and August 13, 2013.

(o) On August 29, 2013, CS2 contacted ZOUCK on the Target Cellular Telephone. ZOUCK said that he was out of methamphetamine but would have more the following day.

(p) An administrative subpoena was served on Verizon Wireless requesting subscriber information for Target Cellular Telephone. Verizon Wireless responded on August 30, 2013, stating that the Target Cellular Telephone is subscribed to ZOUCK's employer, Coryell Enterprises, 1531 E. Bradford Parkway, Springfield, Missouri.

(q) On September 3, 2013, CS2 called ZOUCK again on the Target Cellular Telephone and set up a purchase of one half ounce of methamphetamine. Later that day, CS2 and the DEA conducted a controlled purchase of 3/8 of an ounce of methamphetamine. ZOUCK arrived at the meet location driving a white cargo van with Coryell Enterprises on the side.

(r) ZOUCK had CS2 follow him to the Coryell Enterprises maintenance yard located in the 1600 block of East Elm Street, Springfield, Missouri. There, CS2 paid ZOUCK $1,000.00 United States Currency for approximately 3/8 of an ounce of methamphetamine that ZOUCK recovered from his red Coryell Enterprises work truck.

In further support of this application, Gary Milligan, Assistant United States Attorney, certifies that the information likely to be obtained from the pen register and trap and trace device is relevant to the ongoing criminal investigation, in that it is believed that this information will concern the ongoing unlawful drug trafficking activities of David ZOUCK and his associates, in violation of Title 21, United States Code, Sections 841(a)(1) and 846.

3. Applicant requests that the Court issue an order authorizing the use of the pen register and a trap and trace device for the Target Cellular Telephone to capture the incoming and outgoing electronic or other impulses which identify the outgoing number and/or the originating number of a wire or electronic communication, as well as the date, time, and duration of such incoming and outgoing cellular telephone numbers obtained by virtue of the pen register and a trap and trace device for a period of sixty (60) days, commencing upon installation and implementation of the pen register and trap and trace device.

4. Applicant further requests that the authorization given be intended to apply not only to the Target Cellular Telephone number listed herein, but to any changed mobile telephone numbers which may be associated with the Electronic Serial Number ("ESN") used by the Target Cellular Telephone, within the sixty (60) day period.

5. Applicant further requests that the order direct the furnishing of information, facilities, and technical assistance necessary to accomplish the installation of the pen register and

trap and trace device with a minimum of disruption of normal telephone service. The wire communications service provider, Verizon Wireless, a communications common carrier as defined in 18 U.S.C. § 2510(10), shall be compensated by the United States Drug Enforcement Administration for reasonable expenses incurred in providing such facilities and technical assistance.

6. Applicant further requests that pursuant to 18 U.S.C. § 2703(c)(1)(B) the order direct Verizon Wireless to furnish agents of the United States Drug Enforcement Administration with subscriber information related to the numbers recorded or identified by the pen register and trap and trace device described herein, to include all available names, addresses, social security numbers, and other identifying information, all subscriber and service feature information, IMSI, toll records, including incoming and outgoing telephone numbers, credit information, billing information, and air-time summaries for available service periods, for telephone numbers being dialed to and from the Target Cellular Telephone.

7. Applicant further requests that the order direct that the results of the pen register and the trap and trace device, as well as all subscriber information concerning telephone numbers, both published and non-published, obtained as a result of the pen register and the trap and trace device, pursuant to 18 U.S.C. § 2703(c)(1)(B), shall be furnished to agents of the United States Drug Enforcement Administration at reasonable intervals during regular business hours for the duration of the order.

8. Applicant further requests, pursuant to 18 U.S.C. § 2703(c)(1)(B), that the order direct Verizon Wireless to furnish agents of the United States Drug Enforcement Administration with the information of whether the Target Cellular Telephone is in a "call forwarded status," referring to a condition whereby all incoming telephone calls to the Target Cellular Telephone

are electronically transferred to, or through, other telephone numbers. Further, it is requested that Verizon Wireless be directed to identify any telephone numbers, both published and non-published, to include the identity, address, and social security numbers of subscribers to which, and through which, all calls from the Target Cellular Telephone are directed.

9. Applicant further requests, pursuant to 18 U.S.C. § 2703(c)(1)(B), that the order direct Verizon Wireless to furnish agents of the United States Drug Enforcement Administration with the information of whether the Target Cellular Telephone is in a "speed dialing status," referring to a condition whereby all outgoing telephone calls are electronically dialed to, or through, other telephone numbers. Further, it is requested that Verizon Wireless be directed to identify any telephone numbers, which are programmed into the speed dialing function of the Target Cellular Telephone, both published and non-published, and provide subscriber information on all those numbers, to include the identity, address, and social security numbers.

10. Applicant further requests that the order direct Verizon Wireless to initiate the enhanced caller identification option on the Target Cellular Telephone, without the knowledge of or notification to the subscriber, for the purpose of decoding incoming telephone numbers for a period of sixty (60) days.

11. Applicant further requests that the order direct the United States Drug Enforcement Administration, its agents and employees, and Verizon Wireless, or any officer, agent or employee thereof, not to disclose to the subscriber, or any other person, the existence of this application, the order sought herein, or of this investigation unless otherwise ordered by the Court.

12. Applicant further requests that the order direct the Clerk of the United States District Court for the Western District of Missouri, or a Deputy Clerk thereof, to provide the

undersigned Assistant United States Attorney with two certified true copies of all orders entered herein for official use by the United States Attorney's Office and the United States Drug Enforcement Administration, such use including, but not limited to, providing one such certified true copy of the orders entered herein to an appropriate official of Verizon Wireless for confidential maintenance of such copy in the files of that company.

13. Applicant requests that this application and the Order thereon be SEALED until further order of this Court.

WHEREFORE, it is respectfully requested that the Court grant an order authorizing the above-mentioned requests, SEALING this application and the Court's order.

Respectfully submitted,

TAMMY DICKINSON
United States Attorney

By _____
Gary Milligan, DC. Bar #484813
Assistant United States Attorney
901 St. Louis Street, Suite 500
Springfield, Missouri 65806-2511

### DECLARATION

I, Gary Milligan, being first duly sworn, state that the facts set forth in the foregoing application are true and correct to the best of my knowledge and belief.

_____
Gary Milligan
Assistant United States Attorney

-9-